# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

**FILED**

JAN 18 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF THE SEARCH OF:
INFORMATION ASSOCIATED WITH THE GOOGLE
ACCOUNT **skateparkblackhoodie@gmail.com**
THAT IS STORED AT PREMISES CONTROLLED BY
GOOGLE LLC

)
)
)
)
)

**FILED UNDER SEAL**

4:23 MJ 7020 SPM

SIGNED AND SUBMITTED TO THE COURT
FOR FILING BY RELIABLE ELECTRONIC
MEANS

## APPLICATION FOR A SEARCH WARRANT

I, __SA Daniel Root__, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

### SEE ATTACHMENT A

located in the ___Northern___ District of ___California___, there is now concealed

### SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):

| | |
|---|---|
| XX | evidence of a crime; |
| XX | contraband, fruits of crime, or other items illegally possessed; |
| XX | property designed for use, intended for use, or used in committing a crime; |
| | a person to be arrested or a person who is unlawfully restrained. |

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title      Section | |

18 U.S.C. § 2252A, receipt, distribution and/or possession of child pornography, and 18 U.S.C. §1470, transfer of obscene material to a minor

The application is based on these facts:

### SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

✓ Continued on the attached sheet.
❑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the following is true and correct.

_____
*Applicant's signature*

Daniel Root, SA, FBI
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: ___January 18, 2023___

_____
*Judge's signature*

City and State: ___St. Louis, Missouri___

___Honorable Shirley P. Mensah, U.S. Magistrate Judge___
*Printed name and title*

AUSA: JILLIAN ANDERSON

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH skateparkblackhoodie@gmail.com THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No. 4:23 MJ 7020 SPM<br><br>**Filed Under Seal**<br><br>SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

Your Affiant, Daniel Root, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      Your Affiant makes this affidavit in support of an application for a search warrant pursuant to Title 18 U.S.C. 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), to require Google, LLC. to disclose to the government records or other information in its possession pertaining to the subscriber or customer associated with the accounts, including the content of communications, as follows:

a.   A search warrant for information associated with a certain account that is stored at premises controlled by GOOGLE, LLC. (hereafter referred to as GOOGLE), an email and internet services provider headquartered at 1600 Amphitheater Parkway, Mountain View, CA 94043. The information to be seized is described in the following paragraphs and in Attachment B. This affidavit is made in support of an application for a search warrant under Title 18 U.S.C. 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require GOOGLE to disclose to the government copies of the information (including the contents of communications) further described in Attachment B. Upon receipt of the information described in

Attachment B, government-authorized persons will review that information to locate the items described in Attachment B.

2.      Your affiant has been employed as a Special Agent ("SA") of the Federal Bureau of Investigation (FBI) since 2016 and is currently assigned to the FBI office in Saint Louis, Missouri. While employed by FBI, I have investigated federal criminal violations related to technology or cybercrime, child exploitation, and child pornography. I have gained experience through training at the FBI Academy, post Academy training, numerous external trainings to include SANS, AXIOM, and Cellebrite, and everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, and 2252A, and I am authorized by law to request a search warrant.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2252A, receipt, distribution and/or possession of child pornography, and 18 U.S.C. §1470, transfer of obscene material to a minor, have been committed by one or more individuals associated with the SUBJECT ACCOUNT. There is also probable cause to search the information described in Attachment A

2

for evidence of these crimes and contraband or fruits of these crimes as described in Attachment B.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

5.      I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require GOOGLE LLC, to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## JURISDICTION

6.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Title 18, U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States (including magistrate judge of such a court) . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## DEFINITIONS

7.      The following definitions apply to this Affidavit and Attachment B:

   a.   "Child Pornography" includes any visual depiction of sexually explicit conduct where (A) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; or (C) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. See 18 U.S.C. § 2256(8).

3

b. "Cloud," as used herein, refers to networked computing facilities providing remote data storage and processing services via the internet, such as once a user is logged into their cloud storage space, they can upload files to it and share them with other users.

c. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile telephones, and other mobile devices.

d. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

e. "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

f. An "Internet Protocol address" or "IP address," as used herein, refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet. Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination.

4

Most Internet Service Providers ("ISPs") control a range of IP addresses. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

g.   "Minor" means any person under the age of 18 years, including infants and toddlers.

h.   "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

i.   "Remote computing service," as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

j.   "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

k.   "Producing" means producing, directing, manufacturing, issuing, publishing, or advertising. See 18 U.S.C. § 2256(3),

l.   "Visual depiction" includes undeveloped film and videotape, data stored on a

5

computer disk or by electronic means which is capable of conversion into a visual

image, and data which is capable of conversion into a visual image that has been

transmitted by any means, whether or not stored in a permanent format. Per 18

U.S.C. § 2256(5).

## PROBABLE CAUSE

8.      On 15 August 2022, during an FBI-authorized undercover operation, an FBI

online covert employee (OCE) posted a message on the anonymous social media site Whisper

about entering high school.

9.      Whisper is a free and anonymous social media and social networking application

that can be accessed and utilized on electronic devices via the internet. Whisper allows users to

post and share photo and video messages and to share text communications anonymously.

10.     Also on 15 August 2022, the FBI OCE received a message from a user on

Whisper with username *Paradoxical_Sims*.

11.     The user stated, "How old are you?" to which the FBI OCE responded, "14 wbu"

[what about you]. The user responded, "I see hmm well I'm 41."

12.     *Paradoxical_Sims* asked the FBI OCE if she knew about "spooning" and began
to engage in sexual conversation. *Paradoxical_Sims* stated the following things during this
conversation:

"If you put your mouth on it then it's called a blowjob. Even though technically you suck
not blow."
"I think the only thing that's painful is sex your first time"
"Well then wait on that"
"You would try it them?"
"Hopefully I can make you more comfortable. I'm trying"
"I mean I could travel"
"So would you hold it?"
"You'd move your hand up and down?"
"Would you taste it?"
"Call me daddy"

6

"I wanna make sure you're learning from mine and not others"
"Would you show me things too?"
"What else would you show me?"
"Where you said you don't have to shave yet"
"Pubic area"
"You'll see daddy's cum later when we exchange the pics"

13.     *Paradoxical_Sims* then directed the FBI OCE to masturbate, saying, "Lay your hand flat with your middle and ring finger spread apart a little. Then move your hand down and up so your pussy goes in between those two fingers"

14.     The FBI OCE repeatedly stated that she was 14 years old throughout the conversation. *Paradoxical_Sims* stated, "Tell me your age again" to which the FBI OCE replied, "I'm 14 why". *Paradoxical_Sims* replied, "It turns me on having you tell me it".

15.     *Paradoxical_Sims* engaged in conversation with the FBI OCE on Whisper from 15 August 2022 until 23 August 2022.

16.     On or around 23 August 2022, *Paradoxical_Sims* then attempted to get the FBI OCE to stop using the chat feature on Whisper and move the conversation to Telegram. Telegram is another free and anonymous social media and social networking application that can be accessed and utilized on electronic devices via the internet. Whisper allows users to post and share photo and video messages and to share text communications and make video calls anonymously. Telegram utilizes end-to-end encryption and is known for anonymity an dprivacy.

17.     Whisper responded to an FBI subpoena for the subscriber data associated with *Paradoxical_Sims*, and provided IP addresses used by that user. The user appeared to be using a Virtual Private Network (VPN) to obscure his identity. A VPN creates a secure connection over the internet and provides an extra layer of privacy and anonymity to a user over the internet.

18.     Your Affiant is aware that Telegram is a chat application available for Android and Apple devices which encrypts the chat, and whose owners operate outside of the United States and do not respond to legal process.

19.     *Paradoxical_Sims* gave instructions to the FBI OCE on how to create a Telegram account and asked the FBI OCE to then send the user name that she had created to *Paradoxical_Sims* in order to continue the communication using an encrypted application.

20.     Once the FBI OCE established a Telegram account, they received a message from a Telegram user who used the display name "*Roorick*".

21.     User "*Roorick*" is the only user who subsequently sent messages to the FBI OCE on this account.

22.     User *"Roorick"* continued speaking to the FBI OCE in the same manner as user *Paradoxical_Sims* did on Whisper, instructing the FBI OCE on how to set a "vanity name". The FBI OCE chose a vanity name consisting of a common first and last name. "*Roorick*" responded to this action by saying that she should not use her real name.

23.     The sexual conversation continued between the FBI OCE and "Roorick". "Roorick" stated, "I like the idea of having you stare at my cock for long periods of time".

24.     "Roorick" asked, "Would you show me your boobs?" and asked about the FBI OCE's underwear, saying, "Show me a part of it", "I just wanna have an idea of what you look like sorta before you see my cock".

25.     "Roorick" continued with sexual conversation, saying the following:

"Maybe I'll be able to teach you how to be the perfect little girl for me".
"Baby when did you turn 14?"
"That is like my fav age"
"Your age turns me on"
"Sorry I was so forward it just sounds so exciting to fuck a freshman. Ahh is that bad?"

8

"Mmm so little baby"
"Barely even have hair above your kitty"
"Ughhh I wish I could see"

26.     On 25 August 2022, the FBI OCE asked, "What ru [are you] doing rn [right now]".

27.     "Roorick" replied, "Getting my cock ready to show you show you [sic] tip" and said:

"If I show you will you stare at it for me?"
"Okay ready baby?"

28.     "Roorick" then sent a photograph of a penis to the FBI OCE over the internet via Telegram.

29.     "Roorick" directed the FBI OCE to look at the photo, saying, "Baby do 5 more minutes only looking at the pic. No distractions." "I'll say when to stop." "Imagine it in your mouth and hands".

30.     "Roorick" continued sexual conversations with the FBI OCE for a number of weeks. From time to time, when the FBI OCE would not respond to "Roorick" for an entire day, "Roorick" would use the Telegram feature to clear the chat, stating that he got nervous that someone had obtained the FBI OCE's cell phone.

31.     The FBI OCE told "Roorick" that she had switched phones and was trying to get Telegram set up on the new phone. "Roorick" wanted to send another photograph of his penis. Expressing frustration at the difficulty of using Telegram, the FBI OCE asked, "Can you text it me?" to which "Roorick" replied, "Omg I wish. That's risky cause you're 14".

32.     On 28 October 2022, "Roorick" said, "I really want my cock sucked by you" "Would you meet me and suck it on your knees?"

9

33.     The FBI OCE stated that they were getting a new phone and that Telegram was not working on the new phone. "Roorick" offered to assist, stating, "I'm gonna tell you what phone number to enter and get the code for you. So all you have to do is type the code in."

34.     On 13 November 2022, "Roorick" wrote, "We can get your phone switched for telegram tonight if you want", "I'm almost ready", "What's the number to text if I lose you?"

35.     The FBI OCE responded with a phone number associated with the undercover handset. They then exited the Telegram application on the FBI undercover handset so that "Roorick" would see that the phone was not receiving messages.

36.     On 13 November 2022 at 1737 hours CST, the FBI OCE received a text message from phone number (832) 930-5675 reading, "Want to try again with a new number?".

37.     The OCE replied "Yes" and "Roorick" responded with a phone number and stated "Only get 5 minutes to enter it".

38.     "Roorick" sent 6 phone numbers throughout this conversation until the FBI OCE successfully created a new Telegram account and the conversation via SMS ceased at 1956 hours CST.

39.     A search of FBI databases showed that phone number (832) 930-5675 was serviced by communications provided TextNow.

40.     On 24 November 2022, TextNow responded to an FBI subpoena and provided data that (832) 930-5675 was registered on 13 November 2022 at 1734 hours CST.

41.     This registration was three minutes before the first text message sent by (832) 930-5675 to the FBI OCE.

42.     Further registration data showed that the e-mail used to register the phone number at 1734 hours CST on 13 November 2022 with TextNow was *skateparkblackhoodie@gmail.com*.

43.     A subpoena was served to Google for *skateparkblackhoodie@gmail.com.* On 30 November 2022, Google responded with user data. The response indicated that *skateparkblackhoodie@gmail.com* was created on 8 July 2022. There was a login event on 13 November 2022 at 1555 hours CST.

44.     The IP address used at that time was *2600:1011:b30a:2c3d:0:4f:932b:d501*, which according to open source searches, is an IPv6 address issued by Verizon.

45.     Based on the above information, there is probable cause to believe that the Google account *skateparkblackhoodie@gmail.com* is being used by an unknown person to further the transfer of obscene material to a minor in violation of 18 U.S.C. § 1470.

46.     Your Affiant previously applied for, and was granted, a search warrant for the subject account on or about December 20, 2022, from the Hon. David D. Noce, based upon an affidavit containing the same fact pattern as set forth herein. The previous search warrant instructed Google to provide responsive data through June 13, 2022, as per a typographical error in Attached B of the December 20, 2022 search warrant. This request is to expand the dates covered in the search warrant in keeping with the more recent dates at issue in the investigation and providing law enforcement with the most recent content of the Google account.

## COMMON CHARACTERISTICS OF INDIVIDUALS WHO HAVE A SEXUAL INTEREST IN CHILDREN AND/OR IMAGES OF CHILDREN

42.     Based on your Affiant's previous investigative experience related to child pornography investigations and the training and experience of other law enforcement

11

officers with whom your Affiant has had discussions, your Affiant has learned that individuals who view and receive multiple images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals:

a. Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, videos, or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse selected child partner, or to demonstrate the desired sexual acts.

b. Individuals who have a sexual interest in children or images of children may retain videos, photographs, correspondence, tape recordings, mailing lists, child erotica, and for many years.

c. Likewise, individuals who have a sexual interest in children or images of children may maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer, cellular phone, hard drive, thumb drive, in the cloud, and other locations. These collections may be maintained for several years and are kept close by, usually at the collector's residence or in the cloud, to enable the individual to view the collection, which is valued highly.

d. Individuals who have sexual interest in children or images of children also may correspond with and/or meet others to share information and materials; rarely

12

destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals they have contacted who share the same interests in child pornography.

e.  Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## BACKGROUND CONCERNING GOOGLE

43.  Google advertises its services as "One Account. All of Google." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, the most common of which are described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account, also described below.

44.  Gmail: Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "contact," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

45.  Contacts: Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts added by the user, as well as contacts the user has interacted with in Google products, up to 25,000 contacts. Users can send messages to more than

one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their Android device address book with their account so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them. Contacts can be accessed from the same browser window as other Google products like Gmail and Calendar.

46.     Calendar:  Google provides an appointment book for Google Accounts through Google Calendar, which can be accessed through a browser or mobile application. Users can create events or RSVP to events created by others. Google Calendar can be set to generate reminder emails or alarms about events or tasks, repeat events at specified intervals, track RSVPs, and auto-schedule appointments to complete periodic goals (like running three times a week). A single Google Account can set up multiple calendars. An entire calendar can be shared with other Google Accounts by the user or made public so anyone can access it. Users have the option to sync their device calendar so it is stored in Google Calendar. Google preserves appointments indefinitely, unless the user deletes them. Calendar can be accessed from the same browser window as other Google products like Gmail and Calendar.

47.     Messaging:  Google provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through browsers and mobile applications, and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention.  Google does not retain Duo voice calls, though it may retain video or voicemail messages.

48.     Google Drive and Keep: Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to Google Drive. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One.  Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them.

49.     Google Keep is a cloud-based notetaking service that lets users take notes and share them with other Google users to view, edit, or comment. Google Keep notes are stored indefinitely, unless the user deletes them.

50.     Android device users can also use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, file downloads, and SMS messages. If a user subscribers to Google's cloud storage service, Google One, they can opt to backup all the data from their device to Google Drive.

51.     Photos: Google offers a cloud-based photo and video storage service called Google Photos. Photos and videos can be shared with others. Google Photos can be trained to

recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

52.     Maps: Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. Users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

53.     Location History: Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is

16

in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History and Web & App Activity after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

54.     Chrome and My Activity: Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account in a record called My Activity.

55.     My Activity collects and retains data about searches that users conduct within their own Google Account or using the Google Search service while logged into their Google Account, including voice queries made to the Google artificial intelligence-powered virtual assistant Google Assistant or commands made to Google Home products. My Activity also may track the websites visited while the Account is logged into the Google Chrome web browser, applications used by the Account on an Android device, ads clicked while logged into the Account, and the use of Google applications by iPhone users while logged into the Account. This search, browsing, and application use history is associated with a Google Account when the

17

user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google Assistant and Google Home voice queries and commands may also be associated with the account if Voice & Audio Activity tracking is enabled. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes them or opts in to automatic deletion of their location history every three or eighteen months. Accounts created after June 2020 auto-delete Web & App Activity after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

56.     Google Play:  Google Accounts can buy electronic media, like books, movies, and music, and mobile applications from the Google Play Store. Google Play records can include records of whether a particular application has been or is currently installed on a device. Users cannot delete records of Google Play transactions without deleting their entire Google Account.

57.     Google Voice: Google offers a service called Google Voice through which a Google Account can be assigned a telephone number that can be used to make, record, and forward phone calls and send, receive, store, and forward SMS and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely, unless the user deletes them.

58.     YouTube: Google also offers a video platform called YouTube that offers Google Accounts the ability to upload videos and share them with others. Users can create a YouTube channel where they can upload videos, leave comments, and create playlists available to the public. Users can subscribe to the YouTube channels of others, search for videos, save favorite videos, like videos, share videos with others, and save videos to watch later. More than one user can share control of a YouTube channel. YouTube may keep track of a user's searches, likes,

18

comments, and change history to posted videos. YouTube also may keep limited records of the IP addresses used to access particular videos posted on the service. Users can also opt into a setting to track their YouTube Watch History. For accounts created before June 2020, YouTube Watch History is stored indefinitely, unless the user manually deletes it or sets it to auto-delete after three or eighteen months. For accounts created after June 2020, YouTube Watch History is stored for three years, unless the user manually deletes it or sets it to auto-delete after three or eighteen months.

59.     Google Pay and records of payments for Google services: A subsidiary of Google, Google Payment Corporation, provides Google Accounts an online payment service called Google Pay (previously Google Wallet), which stores credit cards, bank accounts, and gift cards for users and allows them to send or receive payments for both online and brick-and-mortar purchases, including any purchases of Google services. Users may delete some data associated with Google Pay transactions from their profile, but Google Payment Corporation retains some records for regulatory purposes.

60.     Internet Protocol (IP) Address Logs capture the user's internet protocol addresses as they are reported from the user's operating system. These records will show basic IP addresses and the date/time they were captured to Google LLC's servers.

61.     In my training and experience, an application user's IP log, stored electronic communications, and other data retained by the provider, can indicate who has used or controlled the application account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Google

19

LLC account at a relevant time.  Further, Google LLC account activity can show how and when the account was accessed or used.  For example, as described herein, Google LLC logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Google LLC access, use, and events relating to the crime under investigation.  Additionally, Google LLC account activity may provide relevant insight into the Google LLC account owner's state of mind as it relates to the offense under investigation.  For example, information on the Google LLC account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

Therefore, the computers and systems of Google LLC are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Google LLC, such as account access information, transaction information, and other account information.

## **CONCLUSION**

63.    Based on the aforementioned factual information, your Affiant respectfully submits that there is probable cause to believe that evidence, fruits, and instrumentalities of such criminal offenses may be located in the account(s) described in Attachment A, in violation of 18

U.S.C. § 2252(a)(4)(b) and 18 U.S.C. § 2252A(a)(5)(b) relating to material involving the possession of child pornography.

      I state under the penalty of perjury that the foregoing is true and correct.

   __1-18-23__
DATE

                   DANIEL ROOT
                   Special Agent
                   Federal Bureau of Investigation (FBI)

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41, this ____ day of January, 2023.

                   SHIRLEY P. MENSAH
                   UNITED STATES MAGISTRATE JUDGE
                   Eastern District of Missouri

21

## <u>ATTACHMENT A</u>

### DESCRIPTION OF ACCOUNT TO BE SEARCHED

The Google LLC account(s) associated with the email address skateparkblackhoodie@gmail.com (hereinafter and in Attachment B "SUBJECT ACCOUNT"), which is in the possession of or under the control of Google LLC whose office is headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

**I.**

### INFORMATION TO BE DISCLOSED BY GOOGLE LLC

To the extent that the information described in Attachment A is within the possession, custody, or control of GOOGLE LLC ("GOOGLE LLC"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to GOOGLE LLC, or have been preserved under 18 U.S.C. § 2703(f) or 18 U.S.C. § 2258A(h), GOOGLE LLC is required to disclose the following information to the government for the account listed in Attachment A between January 1, 2022, to January 17, 2023:

(a) All contact information and personal identifying information for the SUBJECT ACCOUNT holder(s);

(b) All photographs, visual depictions and videos uploaded, downloaded or possessed on the SUBJECT ACCOUNT, as well as Exchangeable Image File ("EXIF") data and any other metadata associated with those photographs, visual depictions and videos;

(c) All basic subscriber and billing information for the SUBJECT ACCOUNT;

(d) All Google Photos content, data and information associated with the SUBJECT ACCOUNT;

(e) All records or other information regarding the electronic devices and internet browsers associated with or used in connection with the SUBJECT ACCOUNT, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All IP logs, including all records of the IP addresses that logged into the SUBJECT ACCOUNT;

(g)     The length of service (including start date) and the means and source of any payments associated with service (including any credit card or bank account number) related to the SUBJECT ACCOUNT;

(h)     All records pertaining to communications between GOOGLE LLC and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken., including records of any customer service contacts with or about the subscriber, including any inquiries or complaints concerning the SUBJECT ACCOUNT;

(i)     The contents of and all data associated with all email, messages, communications, chats or texts in which information associated with the Google Photos account of the SUBJECT ACCOUNT is incorporated, referenced or provided by link;

(j)     All information regarding any account, including but not limited to email accounts, electronic service accounts or other accounts that accessed photographs, visual depictions and videos associated with the SUBJECT ACCOUNT;

(k)     All information identifying devices (including both computers and mobile devices) used to access the SUBJECT ACCOUNT, including, for example, device serial number, a GUID or Global Unique Identifier, a phone number, MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Android ID, Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

2

(l)     All Cookie Data associated with the SUBJECT ACCOUNT;

(m)    All transactional information about the use of the SUBJECT ACCOUNT, such as records of login (*i.e.*, session) times and durations and the methods used to connect to the account and information regarding accounts registered from the same IP address;

(n)     All Google Drive data and information related to the SUBJECT ACCOUNT;

(o)     All Google Chat, Google Plus and Google Hangouts information, data and content associated with the SUBJECT ACCOUNT; and

(p)     Location history data related to the SUBJECT ACCOUNT.

## II.    <u>INFORMATION TO BE SEIZED BY THE GOVERNMENT</u>

All information described above in Section I that constitutes evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252A, which relate to the receiving, distribution, possession, and access with intent to view child pornography, and 18 U.S.C. § 1480, which relate to thetransfer of obscene material to minors, including but not limited to information pertaining to the following matters:

a.     Evidence indicating how and when the SUBJECT ACCOUNT was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the SUBJECT ACCOUNT's owner or user;

b.     Evidence indicating the SUBJECT ACCOUNT owner's or user's state of mind as it relates to the crime under investigation;

c.     The identity of the person(s) who created or used the SUBJECT ACCOUNT, including records that help reveal the whereabouts of such person(s);

d.     Evidence of or constituting child pornography and/or the receipt, distribution, possession and accessing of child pornography;

3

e.      Evidence regarding communications related to child pornography, the sexual exploitation or abuse of minors and/or grooming of minors for sexual exploitation or sexual abuse; and

f.      Evidence of searching or attempting to receive, possess and distribute child pornography.

## III.   <u>METHOD OF SERVICE</u>

IT IS ORDERED that, notwithstanding 18 U.S.C. §§ 2252 and 2252A, GOOGLE LLC shall deliver these records in an electronic format, by online law enforcement portal, or by download link sent by electronic mail (e-mail) to Federal Bureau of Investigation Special Agent Daniel Root at dproot2@fbi.gov <u>within 10 days of the service of this warrant</u> except as provided below.

**If the records contain apparent child pornography**, GOOGLE LLC SHALL NOT send the records in unencrypted attachment(s) to the government email address listed above; instead, GOOGLE LLC shall send the records in an encrypted format or via online law enforcement portal or in an indirect download link provided by email or other electronic means.

If the aforementioned delivery options are not possible, then GOOGLE LLC shall reduce the records to a compact disk (CD), DVD, Blu-ray disk, USB, or other physical storage device and sent by domestic U.S. Mail or common carrier <u>within 10 days of the service of this warrant</u> to the following address:

SPECIAL AGENT DANIEL ROOT

FEDERAL BUREAU OF INVESTIGATIONS

2222 MARKET STREET

ST. LOUIS, MO 63103

IT IS FURTHER ORDERED that GOOGLE LLC shall supply the name and contact information for all employees who conduct the search and produce the records responsive to this warrant.

a.   Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.

4

### CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS

### PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by GOOGLE, LLC, and my official title is

_____. I am a custodian of records for GOOGLE, LLC. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of GOOGLE, LLC, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of GOOGLE, LLC, and

c.      such records were made by GOOGLE, LLC as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____

Date                                      Signature